Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9684 | **DATE** | MAY 8, 2002 |
| **CASE TITLE** | PAUL FENJE, M.D. v. BD. OF GOVERNORS OF THE UNIVERSITY OF ILLINOIS AT CHICAGO MEDICAL SCHOOL, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing will be held on May 29, 2002 at 11:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling date of May 15, 2002 is vacated. Defendants' amended motion to dismiss [5] is granted in part and denied in part. Defendant Board of Governors of the University of Illinois at Chicago Medical School is dismissed without prejudice. Plaintiff's equal protection claims are dismissed. Within two weeks, defendant Feld shall answer the remaining allegations of the complaint. All discovery is to be completed by September 6, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 number of notices | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | MAY 9 2002 date docketed | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | | 14 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | cw | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL FENJE, M.D.,           )
                            )
        Plaintiff,          )
                            )
    v.                      )    No. 01 C 9684
                            )
BOARD OF GOVERNORS OF THE   )
UNIVERSITY OF ILLINOIS AT   )
CHICAGO MEDICAL SCHOOL and  )
JAMES FELD, M.D., in his    )
official capacity and in his)
individual capacity,        )
                            )
        Defendants.         )

DOCKETED
MAY 9 - 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Fenje was accepted into the anesthesiology residency program at the University of Illinois at Chicago Medical School. Allegedly, a few days after his residency began, plaintiff was terminated from the program. Plaintiff brought the present lawsuit naming as defendants the Board of Governors of the University of Illinois at Chicago Medical School and James Feld, the Director of Anesthesiology for the Medical School. Feld is named in his individual and official capacity. Since suing Feld in his official capacity is the same as suing the

Medical School and since plaintiff has misnamed the entity that governs the Medical School,[1] the Board of Governors will be dismissed without prejudice. It is sufficient to name Feld in his individual and official capacities. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); A. Kelley's Garage, Inc. v. City of Northlake, 2000 WL 1889671 *6 (N.D. Ill. Dec. 28, 2000); Davis v. Sheahan, 1997 WL 49307 *1 n.1 (N.D. Ill. Jan. 31, 1997). Presently pending is defendant's motion to dismiss.

On a Rule 12(b)(6) motion to dismiss, plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a); Anderson v. Simon, 217 F.3d 472, 474 (7th Cir. 2000), cert. denied, 531 U.S. 1073 (2001); Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999); Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). A plaintiff in a suit in federal court need not plead facts; conclusions may be pleaded as long as the

---

[1] The Board of Trustees of the University of Illinois apparently is the correct governing board.

defendant has at least minimal notice of the claim. Fed. R. Civ. P. 8(a)(2); Scott, 195 F.3d at 951; Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997); Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000); Scott, 195 F.3d at 951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). However, in response to a motion to dismiss that raises the issue, the plaintiff must identify the legal basis for a claim and make adequate legal arguments in support of it. Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041-42 (7th Cir. 1999); Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Carpenter v. City of Northlake, 948 F. Supp. 759, 765 (N.D. Ill. 1996). It is also unnecessary to plead facts that would negate an affirmative defense. Alvarado v. Litscher, 267 F.3d 648, 651-52 (7th Cir. 2001); Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir. 1993), cert. denied, 511 U.S. 1085 (1994); Wade v. Henderson, 2002 WL 15697 *1 (N.D. Ill. Jan. 4, 2002). It is also true, however, that a plaintiff can plead himself or herself out of court by alleging facts showing there is no viable claim. Jackson, 66 F.3d at 153-54; Tregenza,

12 F.3d at 718; Early v. Bankers Life & Casualty Co., 959 F.2d 75, 79 (7th Cir. 1992).

As long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in his or her response to a motion to dismiss. Brokaw v. Mercer County, 235 F.3d 1000, 1006 (7th Cir. 2000); Forseth, 199 F.3d at 368; Albiero, 122 F.3d at 419; Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997); Hrubec v. National Railroad Passenger Corp., 981 F.2d 962, 963-64 (7th Cir. 1992). Additionally, there is a narrow exception that a document (particularly a contract) that has not been made part of the complaint but which has been provided by a party, can nevertheless be considered on a Rule 12(b)(6) motion if the document is referred to in the complaint and is central to a claim contained in the complaint. Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998); Wright v. Associated Insurance Cos., 29 F.3d 1244, 1248 (7th Cir. 1994). The contents of such documents will override inconsistent descriptions of those documents alleged in the body of the complaint. See In re Wade, 969 F.2d 241, 249 (7th Cir. 1992); Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988). Furthermore, without converting a motion to dismiss to one for summary judgment, judicial notice may be taken of historical documents, documents contained in the public record, and reports, decisions, and regulations of administrative bodies. Anderson,

217 F.3d at 474-75; Menominee Indian Tribe of Wisconsin v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998), cert. denied, 526 U.S. 1066 (1999); Manheim v. University of Illinois Board of Trustees, 2001 WL 185170 *6 n.3 (N.D. Ill. Feb. 2, 2001); Northgate Motors, Inc. v. General Motors Corp., 111 F. Supp. 2d 1071, 1077 (E.D. Wis. 2000); Demick v. City of Joliet, 108 F. Supp. 2d 1022, 1025 (N.D. Ill. 2000).

According to the allegations of the complaint, plaintiff is a medical doctor, a citizen of Canada, and a former anesthesiology resident at the Medical School. Feld is alleged to be the Medical School's Director of Anesthesiology. On June 7, 2000, plaintiff accepted the Medical School's offer to matriculate into the anesthesiology residency program. In response to the motion to dismiss, plaintiff provides a copy of his "Resident Agreement." The Agreement is dated June 23, 2000 and Fenje's signature is dated July 17, 2000. The signatures on behalf of the University are labeled as that of the Program Director dated July 24, 2000 and the Associate Dean of Graduate Medical Education dated August 1, 2000. The Agreement provides that it commences August 1, 2000 and terminates July 31, 2001. Paragraph 10 of the Agreement provides:

> *Termination:* This Agreement may be terminated as follows:
> a) by the University in the event the Resident fails to obtain the appropriate medical license from the State of Illinois within

- 5 -

>                    thirty (30) days of the commencement of this
>                    Agreement. In lieu of termination, the
>                    University may take such disciplinary action
>                    against the Resident it deems appropriate
>                    including suspension without pay from the
>                    program.
>         b)         by the University upon the failure of the
>                    Resident to comply with the terms and duties
>                    described in this Agreement.
>         c)         by the Resident upon the University's
>                    failure to comply with the terms of this
>                    Agreement provided the Resident furnishes
>                    thirty (30) day advance written notice to
>                    the University.
>         d)         by mutual agreement of the parties as
>                    evidenced in writing.

Plaintiff alleges that "[w]ithout notice, provocation, or just cause, on August 4, 2000, Plaintiff received a telephone message from Dr. Feld telling him that he had been terminated from the anesthesiology residency program at the University of Illinois at Chicago Medical School." Complaint ¶ 9. Plaintiff clarified in his answer brief that no hearing or process of any kind was provided. In the complaint, it is also alleged that no opportunity for appeal was provided.

Count I of the complaint is denominated as a due process violation and Count II as an equal protection violation. Count III is denominated as a "Violation of § 1983," but again refers to due process and equal protection violations. It is unclear how Count III differs from the other two counts.[2]

---

[2]In his answer brief, plaintiff makes passing reference to possible state law claims, but does not make any argument in

Plaintiff prays for compensatory and punitive damages. He also prays for injunctive relief prohibiting future violations as well as reinstatement into the residency program.

Plaintiff does not dispute that the Eleventh Amendment bars any damages claim against Feld in his official capacity and the complaint expressly limits the damages claim against Feld to being in his individual capacity. See Complaint ¶¶ 17-18. The Eleventh Amendment, however, does not preclude injunctive relief as against Feld in his official capacity. See Luder v. Endicott, 253 F.3d 1020, 1024-25 (7th Cir. 2001); Power v. Summers, 226 F.3d 815, 820 (7th Cir. 2000).

Defendant contends the due process claim must fail because plaintiff had no property interest in the resident position. Defendant misreads the complaint as alleging that the offer was withdrawn before a contract was signed or the residency begun. The complaint, however, alleges that plaintiff began the residency and then was terminated. Plaintiff's answer brief makes this clear and provides a copy of his signed contract. The contract further shows that it has a provision that precludes termination absent cause or mutual agreement. Defendant still contends that the contract is without effect because it was not

---

support thereof. Possible state law claims are not being considered.

executed by the appropriate University of Illinois Hospital official.

Defendant relies on a document entitled the General Rules Concerning University Organization and Procedure.[3] Section 4(c) of Article II of the General Rules provides:

> Contracts relating to appointments to the staff may be executed by the secretary of the Board of Trustees. Agreements providing for the appointments of resident physicians and dentists may be executed by the chief of staff of the University of Illinois Hospital. . . . Unless otherwise ordered by the Board of Trustees in specific cases, other contracts to which the University is a party shall be signed by the comptroller of the Board of Trustees and attested to by the secretary of the Board of Trustees.

Defendant contends the "chief of staff" is the Director of the University of Illinois Hospital. Since the Agreement provided by plaintiff is denominated as being signed by the Program Director and Associate Dean, defendant contends it is not enforceable against the University and therefore cannot support a property interest.

The University of Illinois has a set of rules known as the "Statutes," which are "bylaws having the force of administrative rules and hence 'law' in Illinois." Upadhya v. Langenberg, 834 F.2d 661, 663 (7th Cir. 1987), cert. denied,

---

[3]The University of Illinois General Rules, as well as the University of Illinois Statutes may be found at http://www.uillinois.edu/trustees.

486 U.S. 1033 (1988). See also Manheim, 2001 WL 185170 at *6. See, e.g., Levenstein v. Salafsky, 2002 WL 187505 *6-11 (N.D. Ill. Feb. 6, 2002). Article I, section 6 of the Statutes provides:

> **The General Rules** supplement the **Statutes**. **The General Rules** are subordinate to the **Statutes** and deal with administrative organization, with the powers, duties, and responsibilities of officers of the University, and with university employment policies, property, and other matters. **The General Rules** are adopted by the Board of Trustees acting on the advice of the president of the University. The board reserves the right to make changes in **The General Rules** after consultation with the president. Before providing such advice or consultation, the president shall consult with the University Senates Conference, with due regard for the provisions of Article XII, Section 4. However, consultation with the conference is not required when because of exceptional circumstances a proposed action of the Board of Trustees would authorize a deviation from **The General Rules** for a specific transaction.

Thus, the General Rules are incorporated into the Statutes and also have the effect of administrative rules and hence law in Illinois. See Black Knight Productions, Inc. v. University of Illinois at Chicago Black Student Association, 50 Ill. Ct. Cl. 406, 1998 WL 1669060 *3 (1998).

Defendant contends that Upadhya holds that "contracts between the University and third parties must be approved and signed in accordance with the formalities set forth in the University's published rules." Def. Amended Motion to Dismiss

at 2-3. However, Upadhya did not concern the formalities of execution of an employment contract, particularly who had the authority to sign the contract. It held that no clear oral promises were made that could override the written terms of the professor's contract which incorporated terms of the Statutes. Upadhya, 834 F.2d at 663-66. In dictum, the court stated that Upadhya "did not obtain an express promise that five years would be his minimum term, and any implication to that effect was unauthorized by the President and Board of Trustees of the University--the only persons who could bind the University to such contracts." Id. at 666. Similarly, in McElearney v. University of Illinois at Chicago Circle Campus, 612 F.2d 285, 290-91 (7th Cir. 1979), the Seventh Circuit held that informal assurances by a department head could not override formal, explicit tenure provisions contained in the Statutes. Neither of those cases address the issue of who has authority to sign an employment contract with the University.

Although not cited by either side, an Illinois Court of Claims case addresses the issue of authority to sign a contract on behalf of the University of Illinois. In Black Knight, a University student group contracted with the plaintiff to promote and manage a fair. Although the contract was expressly stated as being between the plaintiff and the student group, a University official signed the contract as a "witness." The plaintiff

contended the official's signature made the University a party to the contract. In ruling on the University's motion to dismiss, the Court of Claims assumed the official was acting as an agent of the University and not merely a witness to the contract. Nevertheless, the court held that the University could not possibly be bound by the contract because General Rule 4(c) required that such a contract be signed by the Board of Trustee's comptroller and attested to by the Board's secretary. Black Knight, 1998 WL 1669060 at *3-4.

> . . . it is a well settled principle of law that in dealing with an agent of the State one must ascertain at his peril the authority of the agent, and the mere assertions of the agent are not sufficient to bind the State. (New Life Development Corp. v. State (1992), 45 Ill. Ct. Cl. 65, 86; Melvin v. State (1989), 41 Ill. Ct. Cl. 88; Dunteman v. State (1985), 38 Ill. Ct. Cl. 51.) "There are statutes dealing with State purchases and there are rules and regulations. These statutes, rules and regulations are all published and available to any vendor who cares to acquaint himself with them." (Central Office Equipment Co. v. State (1979), 33 Ill. Ct. Cl. 90 at 91.) "[A] purchase order emanating from an office or official authorized to obligate the funds of the State is a prerequisite to the establishment of an obligation *** against the State." 33 Ill. Ct. Cl. at 91.
> Respondent, citing Rend Lake College Federation of Teachers v. Community College District (5th Dist. 1980), 84 Ill. App. 3d 308, 405 N.E.2d 364, 39 Ill. Dec. 611, argues that the same principles apply in the case of Respondent. This Court agrees. The general rules concerning university organization and procedure of the University of Illinois are quite clear as to the party[ies] having authority to execute contracts on behalf of Respondent.
> * * *

> In view of the general rules, Respondent cannot be considered as a party to the contract in issue because it was not signed by the comptroller of the Board of Trustees and attested to by the secretary of the Board of Trustees. Assuming that Ms. Grgurich was in fact acting as an agent of Respondent and not merely as a witness to the execution of the contract in issue, the burden remained on Claimant to ascertain whether she had the authority to execute the contract on behalf of Respondent. Claimant failed to do so and, therefore, its claim against Respondent for breach of contract must also fail.

Id.

The language of General Rule 4(c) is that resident agreements "may be executed" by the Hospital chief of staff. The General Rule does not state that such agreements "shall be" or "may only be" executed by the chief of staff. Perhaps this provision contains permissive language because it is an exception to the otherwise mandatory method of executing such an agreement. Defendant, however, points to no such mandatory rule. General Rule 4(a) provides: "Purchases, construction contracts, and other contracts shall be awarded by the Board of Trustees in accordance with applicable state and federal law and with regulations adopted by the Board of Trustees. Contracts involving major changes in or deviations from university policy shall be approved specifically by the Board of Trustees." Thus, unless other regulations so provide, it is not mandatory that the agreement have been specifically approved by the Board of

Trustees absent being executed by the chief of staff. But even if it is assumed that General Rule 4(c) is a permissive exception to a mandatory provision that was not otherwise satisfied, it cannot be determined on defendant's motion to dismiss that plaintiff's Resident Agreement was not properly executed.

First, defendant points to nothing to establish who the chief of staff of the Hospital actually is. Defendant contends chief of staff refers to the Hospital Director, but provides nothing to support that contention. <u>See generally</u> University Statutes Art. III, § 4 (organization of departments such as a hospital). But even assuming neither of the persons who signed plaintiff's Resident Agreement was the chief of staff, defendant ignores that persons entitled to execute contracts on behalf of the University may delegate such authority. <u>See</u> General Rules Art. II, §§ 4(i), 9; Business & Financial Policies & Procedures Manual § 2.[4] On the motion to dismiss, it cannot be determined that the persons who signed the Resident Agreement on behalf of the University were not adequately delegated the authority to do so.

On defendant's motion to dismiss, it cannot be held that plaintiff's Resident Agreement is unenforceable as against the University. Since the Resident Agreement contains a provision

---

[4]This manual is linked to the General Rules on the University of Illinois's website and may be found at http://www.vpaa.uillinois.edu/policies.

that, absent agreement of the parties, it can only be terminated for cause, plaintiff had a property interest in his employment as a resident. See Lalvani v. Cook County, Ill., 269 F.3d 785, 791 (7th Cir. 2001).

Defendant also contends that the due process claim fails because plaintiff does not expressly allege that he timely requested a hearing. Plaintiff alleges that he demanded a hearing; federal pleading rules do not require more. Plaintiff's due process claim will not be dismissed.

As to his equal protection claim, plaintiff does not allege that he was discriminated against based on being a member of a protected group. Instead, he alleges that he "was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Complaint ¶ 14. There is no allegation that defendant was motivated by reasons of a personal nature or that he was vindictive, nor are any facts alleged from which such an inference may be drawn. In his briefs, plaintiff does not contend that he is alleging vindictiveness and instead argues that it is sufficient to allege that defendant's conduct was irrational and wholly arbitrary.

Plaintiff relies on the "class of one" equal protection theory recognized in Village of Willowbrook v. Olech, 528 U.S.

562, 564 (2000) ("Olech II"). In Olech II, the Supreme Court affirmed the Seventh Circuit, stating:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S. Ct. 633, 102 L. Ed. 2d 688 (1989). In so doing, we have explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Sioux City Bridge Co., supra, at 445, 43 S. Ct. 190 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38 S. Ct. 495, 62 L. Ed. 1154 (1918)).
> . . . The complaint also alleged that the Village's demand was "irrational and wholly arbitrary" and that the Village ultimately connected her property after receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. We therefore affirm the judgment of the Court of Appeals, but do not reach the alternative theory of "subjective ill will" relied on by that court.

Id. at 564-65.

Although Olech II could be read as holding that allegations of irrational and wholly arbitrary conduct will suffice even absent an allegation of vindictiveness, the Seventh

Circuit subsequently recognized that <u>Olech II</u> is unclear in that it refers to conduct that is both intentional and irrational. Subsequent to <u>Olech II</u>, the Seventh Circuit continues to hold that vindictiveness is required for a class of one claim.

> The role of motive is left unclear by the Supreme Court's decision. On the one hand the Court recited the standard formula that the equal protection clause forbids intentional differences in treatment for which there is no rational basis. On the other hand it said that the claim that the difference in treatment was "irrational <u>and wholly arbitrary</u>" (emphasis added) was sufficient and that the Court was not reaching our "alternative theory of 'subjective ill will.'" 120 S. Ct. at 1075. If a merely unexplained difference in police treatment of similar complaints made by different people established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws. Repeating what we said in our opinion in <u>Olech</u>, and Justice Breyer in his concurring opinion in the Supreme Court, 120 S. Ct. at 1075, we gloss "no rational basis" in the unusual setting of "class of one" equal protection cases to mean that to make out a prima facie case the plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position. We described the class of equal protection cases illustrated by Olech as "vindictive action" cases and said that they require "proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant." 160 F.3d at 388. No evidence of such an animus was presented in this case.

Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000), cert. denied, 531 U.S. 1080 (2001).

Therefore, in the Seventh Circuit, a class of one claim is subject to dismissal if vindictiveness, ill will, or some other similarly malevolent animus is not alleged. Olech v. Village of Willowbrook, 160 F.3d 386, 388 (7th Cir. 1998), aff'd, Olech II; Northwestern University v. City of Evanston, 2001 WL 219632 *3 (N.D. Ill. March 6, 2001); Byers v. Illinois State Police, 2000 WL 1741723 *4 (N.D. Ill. Nov. 22, 2000); Singleton v. Chicago School Reform Board of Trustees of Board of Education of City of Chicago, 2000 WL 777925 *9 (N.D. Ill. June 13, 2000); Kevin v. Thompson, 2000 WL 549440 *6 (N.D. Ill. May 1, 2000), aff'd, 235 F.3d 1026 (7th Cir. 2000). See also Purze v. Village of Winthrop Harbor, 286 F.3d 452, 454-55 (7th Cir. 2002); Cruz v. Town of Cicero, Ill., 275 F.3d 579, 587 (7th Cir. 2001). Because plaintiff has not alleged such an animus, his equal protection claim will be dismissed.

IT IS THEREFORE ORDERED that the ruling date of May 15, 2002 is vacated. Defendants' amended motion to dismiss [5] is granted in part and denied in part. Defendant Board of Governors of the University of Illinois at Chicago Medical School is dismissed without prejudice. Plaintiff's equal protection claims are dismissed. Within two weeks, defendant Feld shall answer the remaining allegations of the complaint.

All discovery is to be completed by September 6, 2002. A status hearing will be held on May 29, 2002 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: MAY 8, 2002