# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9684 | **DATE** | **MAY 28 , 2002** |
| **CASE TITLE** | **PAUL FENJE, M.D. v. JAMES FELD, M.D., etc.** | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Plaintiff's motions (a) to reconsider order of May 15, 2002, (b) to strike the affidavit of James Feld, the exhibit, and portions of defendants' response to plaintiff's motion for a temporary injunction, and (c) to strike defendants' response to plaintiff's motion for a temporary injunction are denied. Plaintiff's motion for preliminary injunction [17] is granted in part and denied in part. The Clerk of the Court is directed to enter a preliminary injunction in favor of plaintiff and against defendant James Feld as set forth in today's opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAY 29 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | **23** |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | cw | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing initials |



MAY 29 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL FENJE, M.D.,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )    No. 01 C 9684
                                     )
JAMES FELD, M.D., in his             )
official capacity and in his         )
individual capacity,                 )
                                     )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

In the summer of 2000, plaintiff Paul Fenje, a Canadian
citizen, was accepted into the anesthesiology residency program
at the University of Illinois at Chicago Medical School.  The
residency was to run from August 1, 2000 until July 31, 2001.
Defendant James Feld is the Director of the Residency Training
Program for the Department of Anesthesiology at the University of
Illinois Hospital.  On August 4, 2000, Feld informed plaintiff
that he was terminated from the residency program.  Approximately
16 months later, in December 2001, plaintiff filed the present
lawsuit.  Following this court's May 8, 2002 ruling on
defendants' motion to dismiss, the only remaining claims are

plaintiff's due process claims against Feld in his individual and official capacities.[1]  See Fenje v. Board of Governors of the University of Illinois at Chicago Medical School, 2002 WL 959837 (N.D. Ill. May 9, 2002) ("Fenje I").  Plaintiff alleges that he had a property interest in his participation in the residency program and that he was not provided a hearing to contest his termination.

On May 13, 2002, plaintiff filed a motion for a "temporary injunction" which was presented in court on May 15, 2002.  Plaintiff had not previously requested preliminary relief or expedited proceedings.  Plaintiff seeks preliminary relief reinstating him in the residency program.  He contends such relief is urgently needed because his certificate from the Educational Commission for Foreign Medical Graduates (the "Certificate"), which is generally required of graduates of foreign medical schools who are in United States medical residency programs, expires May 31, 2002.  The court construed plaintiff's request for a "temporary injunction" as a request for both a temporary restraining order and preliminary injunction. See generally Fed. R. Civ. P. 65.  On May 15, after being presented with defendant's written response, and after hearing from both sides in court, the temporary restraining order was

_____

[1]The other named defendant and plaintiff's equal protection claim were dismissed.

denied, plaintiff was provided with the opportunity to file a reply brief in support of a preliminary injunction, and a further hearing date was set for May 28, 2002.

Ordinarily, an opportunity for discovery and an evidentiary hearing on contested factual issues would be provided before ruling on plaintiff's request for a preliminary injunction. However, plaintiff's delay in bringing his present motion does not allow time for such proceedings to be completed prior to the expiration of his Certificate. The Certificate expressly states on its face that it is valid through May 2002, so plaintiff has known of the expiration date since the Certificate was issued in July 1999. Nevertheless, plaintiff waited more than 16 months after his termination before filing the present lawsuit and, even after filing suit, waited almost five more months before requesting preliminary relief approximately two weeks before the Certificate expires. Plaintiff offers no express explanation for the delay. He does mention going through the National Residency Matching Program in 2001 and 2002 in an attempt to get into another residency program, but being rejected by all programs. Although plaintiff fails to mention the specific dates of his rejection, the court takes judicial notice of news reports that the 2002 announcement date for the Matching Program was March 21. Given that plaintiff already knew of the May 2002 expiration date and his complete

rejection in March 2001, waiting for the March 2002 announcement did not excuse further delay in bringing suit or seeking preliminary relief. Even if it did, he still waited almost two more months after March 21, 2002 before moving for preliminary relief. Thus, the urgent need for preliminary relief is plaintiff's own creation which he could have avoided by timely and diligently acting to protect his rights.

Plaintiff's delay in seeking a preliminary injunction does not act as laches precluding any possibility of relief or absolutely precluding a showing of irreparable harm. <u>Ideal Industries, Inc. v. Gardner Bender, Inc.</u>, 612 F.2d 1018, 1025 (7th Cir. 1979), <u>cert. denied</u>, 447 U.S. 924 (1980). That effect could only arise if defendant had been lulled into a false sense of security or acted to his detriment in reliance on the delay. <u>See</u> <u>id.</u>; <u>Ty, Inc. v. Jones Group, Inc.</u>, 237 F.3d 891, 903 (7th Cir. 2001); <u>Praefke Auto Electric & Battery Co. v. Tecumseh Products Co.</u>, 123 F. Supp. 2d 470, 478-79 & n.8 (E.D. Wis. 2000). The delay, however, is still a factor to be considered. To the extent the urgency created by the delay prevents the evidence from being adequately developed, the weakness in the evidence or failure to make an adequate showing of a likelihood of success or irreparable harm will be held against the movant. Additionally, the delay may be considered in balancing the hardships. <u>See</u> <u>League of Women Voters v. Diamond</u>, 923 F. Supp. 266, 275

(D. Me.), aff'd, 82 F.3d 546 (1st Cir. 1996); Bates v. Jones, 904 F. Supp. 1080, 1097 (N.D. Cal. 1995). Also, delay in pursuing relief undercuts claims of irreparable harm and may be considered as circumstantial evidence that the potential harm to plaintiff is not irreparable or as great as claimed. See Ideal Industries, 612 F.2d at 1025; Praefke, 123 F. Supp. 2d at 478-79; Eldon Industries, Inc. v. Rubbermaid, Inc., 735 F. Supp. 786, 797 (N.D. Ill. 1990); Mylan Pharmaceuticals, Inc. v. Shalala, 81 F. Supp. 2d 30, 43-44 (D.D.C. 2000); Abner Realty, Inc. v. Administrator of General Services Administration, 1998 WL 67663 *5 (S.D.N.Y. Feb. 18, 1998); Costello v. McEnery, 767 F. Supp. 72, 78 (S.D.N.Y.), aff'd by unpublished order, 948 F.2d 1278 (2d Cir. 1991), cert. denied, 504 U.S. 980 (1992).

Because of the urgency of a need for a ruling, the court will rule on the motion for preliminary injunction based on the papers that are before the court. However, because the urgency has been brought about by plaintiff's dilatory conduct, doubts or close factual issues generally will be resolved against plaintiff.

In ruling on plaintiff's motion for preliminary injunction, this court applies a "sliding scale approach."

> A party seeking to obtain a preliminary injunction must demonstrate: (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. See Abbott Labs. v.

> Mead Johnson & Co., 971 F.2d 6, 11 (7th Cir.
> 1992). If the court is satisfied that these
> three conditions have been met, then it must
> consider the irreparable harm that the nonmoving
> party will suffer if preliminary relief is
> granted, balancing such harm against the
> irreparable harm the moving party will suffer if
> relief is denied. See Storck USA, L.P. v. Farley
> Candy Co., 14 F.3d 311, 314 (7th Cir. 1994).
> Finally, the court must consider the public
> interest (non-parties) in denying or granting the
> injunction. Id. The court then weighs all of
> these factors, "sitting as would a chancellor in
> equity," when it decides whether to grant the
> injunction. Abbott Labs., 971 F.2d at 12. This
> process involves engaging in what we term the
> sliding scale approach; the more likely the
> plaintiff will succeed on the merits, the less
> the balance of irreparable harms need favor the
> plaintiff's position. Id. The sliding scale
> approach is not mathematical in nature, rather
> "it is more properly characterized as subjective
> and intuitive, one which permits district courts
> to weigh the competing considerations and mold
> appropriate relief." Id.

Ty, Inc., 237 F.3d at 895-96.

It has already been held that plaintiff has adequately

alleged a property interest in the residency program and a denial

of constitutional due process in not being provided a hearing to

contest his termination from the program. See Fenje I, 2002 WL

859837 at *3-6. But even if plaintiff were to prove all the

allegations of his complaint, it does not necessarily mean that

the appropriate relief would be reinstatement into the residency

program. As to a claim for damages, it is possible to obtain

damages for the termination itself if it can be shown both that

procedural rights were denied and that such denial had a causal

connection with the termination. <u>Alston v. King</u>, 231 F.3d 383, 386 (7th Cir. 2000). However, if plaintiff would have been terminated from the program even if a hearing and other procedural rights had been provided, he would not be entitled to damages resulting from the termination itself. <u>Id.</u> He still could be entitled to damages such as emotional distress, if such stress was attributable to the procedural deficiencies themselves, not just the termination. <u>Id.</u> If that causal connection also could not be proven, then plaintiff would be limited to nominal damages. <u>Id.</u> Similarly, as to injunctive relief, if plaintiff cannot show a hearing would have resulted in his reinstatement in the program, he would not be entitled to injunctive relief ordering a reinstatement. Or in exercising equity to fashion appropriate equitable relief, it may be found that the appropriate relief is to order that a hearing be held, with plaintiff also being entitled to any damages having a causal connection to the delay in providing a hearing. <u>See, e.g.,</u> <u>Patterson v. Portch</u>, 853 F.2d 1399, 1407-08 (7th Cir. 1988). Still, it is recognized that circumstances may exist that justify preliminary injunctive relief ordering reinstatement pending resolution of the merits of a procedural due process claim. <u>See, e.g.,</u> <u>Jones v. Board of Governors of University of North Carolina</u>, 704 F.2d 713 (4th Cir. 1983) (reinstatement of nursing student terminated from the nursing program after she was placed

on probation for one semester and given a failing grade in a
course that was a mandatory prerequisite for further nursing
studies); Bordelon v. Chicago School Reform Board of Trustees,
8 F. Supp. 2d 779 (N.D. Ill. 1998) (reinstating principal as the
principal of his former school after he had been transferred to a
"paper shuffler" position in the Central Office at the same rate
of pay as a principal).  Also, at least one court has held that
following success on the merits of a claim that employment was
terminated in violation of procedural due process, a presumption
would arise that reinstatement in the former position is an
appropriate remedy.  See Coleman v. Lane, 1994 WL 171446 *1-2
(N.D. Ill. May 2, 1994).  That presumption, though, would be
rebutted if, inter alia, it was shown adequate cause existed to
terminate the employee, that the employee was no longer qualified
to perform the job duties, or that no openings existed.  See id.;
Gaddy v. Abex Corp., 884 F.2d 312, 319 (7th Cir. 1989).

        In moving to dismiss the complaint, defendant contended
plaintiff's due process claim failed because his resident
contract was unenforceable in that it was not signed by an
authorized agent of the University and because plaintiff never
made a written request for a hearing as is required under the
University's procedures.  In response to the motion for a
preliminary injunction, defendant points to no evidence and makes
no contention that the persons who signed the contract were not

properly delegated the authority to do so. Defendant does provide an affidavit in which he states plaintiff did not submit a written request for a hearing. In plaintiff's affidavit, he contends he repeatedly "demanded" a hearing, though he does not specify whether any of those demands were in writing.[2] In his response, defendant also sets forth his reasons for terminating plaintiff's participation in the residency program. Feld states that, at his interview with plaintiff, he asked plaintiff if he had had any problems in past training programs, including whether there were any "skeletons in [plaintiff's] closet." Feld states that plaintiff disclosed no such problems and was thereafter accepted in the program. However, Feld subsequently received an anonymous telephone call about plaintiff and further investigation disclosed that plaintiff had been terminated from a residency program in 1999. In plaintiff's August 10, 2000 letter, he admits that he did not disclose this information at the interview, and states it was because he "considered the event a personal attack and not of significance." Defendant further states in his affidavit that the decision to withdraw the offer was "not because of some apparent problem at a previous residency training program, but because he was not candid with me. In

---

[2]Defendant provides an August 10, 2000 letter from plaintiff in which plaintiff states: "I respectfully ask that a complete and sufficient inquiry into this be done." That could be construed as a written request for a hearing.

other words, I concluded at the time that he had misrepresented his background." Defendant does not dispute that he telephonically informed plaintiff of his removal from the program and does not make any contention that he thereafter informed plaintiff in writing.

Plaintiff's resident agreement incorporates the procedural rights contained in an exhibit to the agreement entitled "Procedural Rights to Suspension/Termination." That document includes the following provisions:

> a. Within fourteen (14) days of written notification of his or her suspension or termination, a Resident may request an informal hearing before a Committee, as more fully described below. The Resident's request shall be in writing and submitted to the Department Head or such individual acting in a similar capacity depending on the particular program the Resident is enrolled in.
>
> b. The written notification of suspension and/or termination shall include an explanation from the Department Head (or such individual acting in a similar capacity depending on the particular program the Resident is enrolled in) of the reason(s) for such suspension or termination. The written notification shall also advise the Resident of his or her right to request an informal hearing pursuant to this Exhibit.

The first issue to consider is plaintiff's likelihood of success in obtaining final relief in the form of reinstatement into the residency program. The facts before the court support that the resident agreement went into effect on August 1, 2000 and was thereafter terminated. The facts also support that this

agreement could not be terminated without cause. Therefore, as long as the contract was enforceable, plaintiff had a property interest in his resident position. Fenje I, 2002 WL 959837 at *3, 6. The only issue that has been raised as to the agreement's enforceability is the question of whether it was signed by an authorized official. Defendant does not dispute that the agreement was signed by the Director of the Department of Anesthesiology and Senior Associate Dean for Medical Education of the College of Medicine. There is no present contention that these persons were not authorized to sign the agreement on behalf of the University.[3] On the record presently before the court, it is more likely than not that plaintiff will be able to show that the contract is enforceable.

Plaintiff's claim is for the denial of constitutional due process, not for the contractual enforcement of the procedural rights incorporated in the contract. However, there is no contention that the contractual procedures are not sufficient to satisfy due process requirements. Where constitutionally sufficient procedures are available, including adequate notice of the available procedures, no procedural due process violation occurs when the complaining party fails to make use of those procedures. Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir.

---

[3]Even if not formally authorized, it is possible that a pattern or practice of having such persons sign the contract could be construed as an accepted University policy.

2000); <u>R.E. Grills Construction Co. v. Alabama Department of Transportation</u>, ___ F. Supp. 2d ___, ___ & n.5, 2002 WL 857319 *3 & n.5 (N.D. Ala. April 25, 2002); <u>Rhyce v. Martin</u>, 173 F. Supp. 2d 521, 530-31 (E.D. La. 2001); <u>Locasio v. Winchester Board of Education</u>, 2000 WL 303224 *4 & n.8 (D. Conn. Feb. 17, 2000); <u>Waste Conversion, Inc. v. Sims</u>, 868 F. Supp. 643, 652 (D.N.J. 1994); <u>Mid Gulf, Inc. v. Bishop</u>, 792 F. Supp. 1205, 1211 (D. Kan. 1992). Defendant contends that plaintiff did not request a hearing. The two parties' affidavits are in disagreement as to whether plaintiff actually requested a hearing, though plaintiff does not expressly state that he requested a hearing in writing as would be required under the contract and procedures. The one letter provided, however, requests a "complete and sufficient inquiry" which could be understood as a request for a hearing. However, the written request requirement of the contract does not come into play until the University first notifies plaintiff in writing of the termination and also advises him of his right to a hearing. There is no indication that the University ever notified plaintiff in writing that he was terminated from the program or that, after his termination, he was ever notified in writing or otherwise of his right to a hearing. On the present record, it does not appear likely that it will be shown that plaintiff waived his opportunity for a hearing.

As previously discussed, even if plaintiff's procedural rights are shown to be violated, he would not be entitled to reinstatement as relief unless it can be shown that a hearing would have resulted in his being reinstated in the program. Defendant contends cause existed for terminating plaintiff's participation because he was not fully candid during the interview process. On the limited evidence before the court, the merits of this contention cannot be estimated with much clarity. As previously discussed, the inability to develop the preliminary injunction record is the result of plaintiff's dilatory conduct. Thus, doubt as to this issue will be resolved against plaintiff. It will be assumed that it is more likely than not that this factual issue will be resolved against plaintiff. Failure on this issue would preclude reinstatement. Therefore, it is more likely than not that plaintiff will not ultimately succeed in obtaining reinstatement. However, it is still possible that plaintiff will succeed in proving that a hearing would have resulted in a finding that plaintiff be permitted to participate in the residency program.

As to likelihood of success on the merits, it is found that plaintiff has some likelihood of success on the merits, but that it is more likely than not that he will not be able to prove that he is entitled to reinstatement. However, there can be a sufficient basis for granting a preliminary injunction if the

other factors sufficiently weigh in plaintiff's favor. The "minimum threshold for likelihood of success . . . is a low one: '[i]t is enough that the plaintiff's chances are better than negligible . . . .'" Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999) (quoting Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 387 (7th Cir. 1984)). Accord Ty, Inc., 237 F.3d at 897.

The next question is whether no adequate remedy at law exists. According to plaintiff's affidavit, following his termination from the University of Illinois residency program, he has not been able to get into another residency program. Plaintiff will not be able to practice anesthesiology if he does not complete a residency program in that field.[4] Therefore, monetary relief would not be an adequate remedy because it would still leave plaintiff without the ability to practice in his chosen field.

Another basic requirement for a preliminary injunction is a showing of irreparable harm. Plaintiff provides a copy of his Certificate showing that it is valid through May 2002. Plaintiff states in his second affidavit that it took him several years of clinical training and academic study to pass the tests necessary

---

[4]The complaint alleges that plaintiff is "a medical doctor." It is unclear if this means that he may practice in other medical fields in Canada, where he is a citizen, or if this simply means that he has graduated from medical school and passed his initial licensing tests.

for certification. Without providing any documents from the
Educational Commission itself, plaintiff represents that, if he
has not matriculated into a residency training program before the
Certificate expires, he will have to again take the clinical
examinations. He further represents that it would again take
several years of studying to pass the clinical examination.
Plaintiff provides no documentation from the Educational
Commission to support his representation that he would need to
again take the examination to renew his Certificate. Defendant
questions plaintiff's representation as supported only by
plaintiff's conclusory affidavit, but provides no evidence of its
own.[5]

---

[5]Presumably, the Medical College would have employees who
are aware of the Educational Commission's practices and the
certification requirements for its residency programs and
therefore would have an ability to refute any incorrect
representations that plaintiff may have made about the
certification process. If defendant had serious questions about
plaintiff's representations, it should have provided its own
evidence. A check of the Educational Commission's website
(http://www.ecfmg.org) confirms plaintiff's representation that
he will have to retake the clinical skills assessment test in
order to obtain a three-year renewal of the Certificate. The
website also supports that plaintiff is required to "enter" a
program before the Certificate's expiration date; there
apparently is no requirement that the program be completed before
expiration of the Certificate. "Enter" is further defined as
meaning the "start date" of the program must be before the
expiration date of the Certificate. The website also indicates
that a certificate is valid for three years from the date of a
passing performance for the pertinent test. Plaintiff's
Certificate states: "CLINICAL SKILLS ASSESSMENT MAY 27, 1999.
VALID THROUGH MAY 2002." It is possible that the Certificate
actually expired on May 27, 2002, not at the end of May as the
Certificate otherwise indicates.

The precise date and effect of the expiration of the Certificate is unclear. If matriculation into the residency program prior to the expiration date is all that is required, then arguably plaintiff matriculated into the program on August 1, 2000. If plaintiff were to be reinstated into the program, it is unclear whether the date measured against the expiration date of the Certificate would still be his initial matriculation date or the date of reinstatement. It is also possible that it would be a later date even if he were reinstated now. The Educational Commission's website refers to the "start date" of the Program. Neither party makes any representation as to how the anesthesiology residency program is run, but it is possible that it is a structured program that starts each August. Reinstatement presently may actually mean that plaintiff would have to wait until August 2002 for his start date. Moreover, regardless of the Educational Commission's views as to the expiration of the certificates it issues, it is actually Illinois law that determines licensing requirements for doctors practicing medicine in this state. Illinois statutory law contains certain requirements for graduates of medical colleges located outside the United States and Canada[6] and also provides that the Illinois

---

[6]Although a Canadian citizen, plaintiff apparently attended medical school outside Canada and the United States. No representation is made as to the particular medical school that plaintiff attended.

Department of Professional Regulation may set additional standards.  See 225 ILCS 60/11(A)(2)(b) (1999).[7]  A regulation of the Department provides:  "In addition, if the applicant is a graduate of a medical college outside of the United States or Canada, he/she must hold a current certification, at the time of application for licensure/examination, from the Educational Commission for Foreign Medical Graduates."  68 Ill. Admin. Code § 1285.20(k).  That regulation apparently incorporates the Education Commission's definition of a "current" certification.

It is unclear whether plaintiff would suffer irreparable harm if a preliminary injunction is denied.  If reinstatement into the program also means reinstatement of an August 1, 2000 matriculation date, then he avoids the need for recertification even if he is not reinstated until the completion of this case sometime after May 31, 2002.  On the other side, if the Certificate already expired on May 27, 2002 or if reinstatement today would still result in a later start date that does not prevent the expiration of the Certificate, the possible irreparable harm has already occurred and entry of a preliminary injunction will not avoid it.  Still, the other possibility is that reinstatement this week prevents the Certificate from

---

[7]Prior to March 23, 1999, this statute included an express provision that a foreign medical school graduate "has taken and passed the Educational Commission of Foreign Medical Graduates Examination."

expiring and keeps open the possibility that plaintiff will not have to be recertified in the event he ultimately succeeds on his claim for reinstatement.  But even under this last scenario, a question exists as to the extent of the harm.  Plaintiff contends it would take several years to prepare for recertification.  It is doubted, however, that it would take as long to prepare a second time as it took the first time.  Moreover, to the extent it is true that plaintiff presently needs that much time to again prepare for the test, a serious question would exist as to whether he is presently qualified to perform the duties of a medical resident.  It would not be in the public interest to order the reinstatement of a person not qualified to practice medicine, even more so in the high-risk medical field of anesthesiology.

As previously discussed, plaintiff's delay in seeking preliminary relief is circumstantial evidence going against finding that irreparable harm is actually present.  Additionally, as previously discussed, any doubt resulting from deficiencies in the record will be resolved against plaintiff.  Further, resolving doubt in that manner is consistent with plaintiff having the burden to show irreparable harm.  The one factor that brings pause is that, despite defendant's presumably ready access to such information and evidence, defendant did not provide any significant evidence or argument disputing plaintiff's

representations as to his Certificate and its possible expiration. Therefore, it will be assumed that plaintiff's present reinstatement would prevent his Certificate from expiring and that renewing the certificate would require a significant investment of time and money. It is found that plaintiff just barely satisfies the irreparable harm requirement.

Although it is being assumed that plaintiff has some likelihood of success in obtaining reinstatement and some irreparable harm, neither is high on the scale. As previously indicated, it also must be considered that there is a possible risk to the public if plaintiff were to be reinstated such that he would immediately begin attending patients. Placing plaintiff in such a position would also be potentially harmful to defendant in that it would place the University at risk of malpractice liability. If this were the only possible form of relief, the sliding scale would go against granting preliminary relief.

However, preliminary relief can be shaped in a manner that represents essentially no burden whatsoever for defendant and does not place any risk on the public nor require any significant public expenditures. At the time the injunction motion was presented in court, plaintiff suggested reinstating him in the residency program without requiring that defendant actually permit him to act as a resident. Essentially, this would just be a "paper" reinstatement into the residency program.

There would be no possible risk to the public because plaintiff would not actually be attending patients. Defendant would not incur any expenses or burden because the injunction will expressly provide that no salary is to be paid. Instead, the order will provide that plaintiff is reinstated, but placed on suspension without pay pending resolution of this court case.[8] Whether this will actually prevent the Certificate from expiring is unknown, but plaintiff believes that it will and, since no burden is being placed on defendant, equity favors this attempt to preserve rights of plaintiff that might otherwise be lost during the pendency of judicial proceedings.

IT IS THEREFORE ORDERED that plaintiff's motions (a) to reconsider order of May 15, 2002, (b) to strike the affidavit of James Feld, the exhibit, and portions of defendants' response to plaintiff's motion for a temporary injunction, and (c) to strike defendants' response to plaintiff's motion for a temporary

---

[8]At the prior court hearing, defendant also offered to provide a hearing for plaintiff as to whether he should be fully reinstated into the residency program. Defendant is free to offer such a hearing during the pendency of the preliminary injunction. Plaintiff expressed a disinclination to accept such an offer, but he does so at the peril of being found to have waived his procedural due process claim. While plaintiff may be justified in questioning whether he can still expect a fair and impartial hearing once he has already filed suit, see Patterson, 859 F.2d at 1407, the burden would likely be on plaintiff to show at trial that declining such an offer (should it be made) was justified. Plaintiff also has a duty to mitigate his damages. Id. at 1408. Additionally, it is possible that accepting such a hearing would result in his reinstatement or at least have some healing affect. See id. at 1407.

injunction are denied.  Plaintiff's motion for preliminary
injunction [17] is granted in part and denied in part.  The Clerk
of the Court is directed to enter a preliminary injunction in
favor of plaintiff and against defendant James Feld in his
official capacity ordering that (1) by no later than May 30,
2002, plaintiff is to be temporarily reinstated into the
anesthesiology residency program of the University of Illinois at
Chicago Medical School; (2) upon reinstatement, plaintiff shall
be under indefinite suspension without compensation, benefits,
accrual of seniority, the right to any training, or the authority
to treat patients; and (3) this order shall remain in force until
final judgment is entered in this case or this case is dismissed.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED:  MAY  28 , 2002